**United States District Court**
For the Northern District of California

*E-FILED 12/18/2008*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTINA SANCHEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>SUZETTE Z. TORRES, FIRST AMERICAN TITLE, JANE E. BEDNAR, NAM NGUYEN, HOMECOMINGS FINANCIAL NETWORK, CITIMORTGAGE, INC., JEFFERY H. LOWENTHAL, BRYAN M. KRAFT, ANGELO PAUL RUSSO, CITY OF SALINAS, ADAM M. GREELY, ANDY PHAM, MONTEREY COUNTY, EXECUTIVE TRUSTEE SERVICES, LOANCITY.COM, JOHN H. MITCHELL,<br><br>    Defendants.<br>_____/ | No. C07-04174 HRL<br><br>**ORDER ON MOTIONS TO DISMISS AND UNDER FED.R.CIV.P. 4(m)**<br><br>[Re: Docket Nos. 24, 28, 33] |

    Presently before the court are three motions to dismiss the Second Amended Complaint ("SAC"). Defendants Suzette Z. Torres, First American Title Insurance Company, Nam Nguyen, Homecomings Financial Network, Inc., Citimortgage, Inc., Jeffrey H. Lowenthal, and Bryan M. Kreft (all hereafter referred to collectively as the "Nguyen defendants") move under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) and Fed. R. Civ. P. 12(b)(6) (failure to state a claim for relief). Defendants County of Monterey ("Monterey") and City of Salinas

1  ("Salinas") also each move under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]  Plaintiff filed belated
2  responses to the motions; and, although the motion hearings were continued twice at her
3  request, she failed to appear for oral argument.  Upon consideration of the moving and
4  responding papers, as well as the arguments presented at the September 30, 2008 motion
5  hearing, this court (a) grants the motions of the Nguyen defendants and Salinas <u>without</u> leave to
6  amend; and (b) grants Monterey's motion <u>with</u> leave to amend.  The SAC is also dismissed
7  without prejudice as to unserved defendants Bednar, Russo, Pham, Executive Trustee Services,
8  LoanCity, Mitchell and Greely.

## I. BACKGROUND

10  Pro se plaintiff Christina Sanchez, aka Sylvia Nicole, aka Van Kim Lai[2] filed this action
11  on August 14, 2007 and a First Amended Complaint (FAC) on November 13, 2007.  The
12  Nguyen defendants moved to dismiss the FAC.  (Monterey and Salinas were not yet named
13  defendants.)

14  Briefly stated, the FAC focused on real property located at 834 Tumbleweed Drive in
15  Salinas ("Tumbleweed").  Allegedly, the Nguyen defendants defrauded her and wrongfully
16  deprived her of title to this property.  The specific focus of her distress was an underlying action
17  in Monterey County Superior Court which resulted, in early 2007, in a judgment quieting title
18  to Tumbleweed in favor of purchaser Nam Nguyen and two of his mortgage lenders,
19  Homecomings Financial Network ("Homecomings") and Citimortgage, Inc. ("Citimortgage").
20  Basically, Sanchez claimed that, although neither had been on title when Nguyen acquired the
21  property, both she and her business partner, Andrew Corson, were preexisting equitable
22  "owners."  Corson was in bankruptcy at the time the quiet title action went to judgment.
23  Therefore, Sanchez urged, the "automatic stay" triggered by Corson's bankruptcy (11 U.S.C. §
24  362) was violated when the state court quieted title and that judgment should be set aside.  She

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties who have appeared have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

[2] Although plaintiff alleges that "Christina Sanchez" is her legal name, she seems to use all three names interchangeably.

also asserted claims under 42 U.S.C. §§ 1983 and 1985, as well as a host of state law claims under theories, for example, of fraud, slander, malpractice, conversion, and intentional infliction of emotional distress.

On April 10, 2008 this court ruled on the Nguyen defendants' motion to dismiss. First, it dismissed on the basis of judicial immunity (and without leave to amend) Judge Robert O'Farrell (the "quiet title" judge) and the Monterey County Superior Court. Then, with respect to the motion, it chose to limit its inquiry to whether Sanchez's suit belonged in federal court (i.e., was there diversity or federal question jurisdiction?), indicating that it would reserve consideration of the sufficiency of her state law claims only after satisfying itself on jurisdiction. There was clearly no diversity jurisdiction, since plaintiff identified herself – as well as eleven of the defendants – as citizens of California. With respect to any possible federal law claim, the court granted the Fed. R. Civ. P. 12(b)(6) motion without leave to amend on the 11 U.S.C. § 362 claim based on Corson's bankruptcy because his bankruptcy stay would not bar creditors from proceeding against Sanchez's property interests. It dismissed with leave to amend the civil rights and conspiracy claims because the court could not conclude with certainty that there were no additional facts to be plead which might meet the essential components (a constitutional violation by a person acting under the color of state law) under 42 U.S.C. §§ 1983 and 1985. On May 8, 2008 Sanchez filed her SAC.

The SAC once again alleges diversity jurisdiction – futilely, because this time Sanchez and twelve defendants are named as citizens of California. It abandons any claim based on either 42 U.S.C. § 1983 or § 1985. It does not mention the bankruptcy automatic stay under 11 U.S.C. § 362. It does not cite any federal statute upon which a claim could be based. It contains eighteen "causes of action," but every one of them is based on state law: slander, malpractice, conversion, perjury, negligence, breach of fiduciary duty, various frauds ("property tax fraud," "lawsuit fraud," "exhibit fraud," "police report fraud," "title fraud," "loan fraud," "corporation fraud," "foreclosure fraud," "commission fraud"), infliction of emotional distress, conspiracy to slander, and conspiracy to commit frauds.

1   The SAC also injects two more properties into the pleading mix: 914 N. Toddy Street, Santa Ana ("Toddy") and 10 Soledad Drive, Salinas ("Soledad").

On the three pending motions to dismiss, this court will again look first at whether Sanchez has plead a federal claim for relief. That is, is there subject matter jurisdiction? If not, it will not look at the sufficiency of the allegations about state law claims and leave it to plaintiff to pursue them, if she chooses, in state court.

## II. LEGAL STANDARD

"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." FED. R. CIV. P. 12(h)(3). A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes that it exists. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction") (citations omitted); see also Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989) ("A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears").

"A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (citing White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)). "'In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004) (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). In a facial attack, all material allegations of the complaint are presumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. Id. When a moving party raises a factual challenge by presenting affidavits and other evidence, the party opposing the

United States District Court
For the Northern District of California

4

1 motion must present affidavits or other evidence necessary to satisfy its burden of establishing
2 subject matter jurisdiction. Id.

### III.  DISCUSSION

By virtue of several documents Sanchez submitted to this court which were first filed by her in Bankruptcy Court, it appears that Sanchez (using the name Van Kim Lai) filed a Chapter 13 Petition in Bankruptcy on November 27, 2007. This petition was dismissed by the bankruptcy judge a few weeks later. Sanchez then filed a second Petition – also quickly dismissed – and then a third. (See Docket Nos. 14, 16, 21). As to the third, she wrote in filings on September 26, 2008 that, because a plan has not been approved and the creditors refused to settle, it too was now "subjected to being dismissed." (See Sanchez Declarations ISO Opp. to Mots. to Dismiss). And, this court is informed that her latest bankruptcy case has, in fact, been dismissed. These bankruptcy filings are mentioned here because her SAC makes a reference, which will be discussed later, to her (rather than Corson's) bankruptcy.

Based on (1) the muddled allegations of the SAC (which often fail to identify which of the three properties a particular allegation refers to), (2) the various declarations, with exhibits, as well as certain bankruptcy filings all provided by plaintiff, and (3) some filings from the Monterey County quiet title action submitted by the Nguyen defendants,[3] what follows is the gist of Sanchez's claims in the SAC. The court's purpose is to see, even if plaintiff has not identified it as such, whether she can plead a federal claim for relief.

### A.  **Tumbleweed Property**

In May 2000, one William Krasovic (not a defendant here) deeded Tumbleweed to Acom World, a Nevada corporation allegedly owned by Sanchez. Sanchez represents that the title was put in the name of her corporation "in trust" for her (making her, presumably, a beneficial or equitable owner, albeit not on the title). Acom World later deeded the land to Andrew Corson, who then deeded to ASTS, another of plaintiff's corporations. She does not allege that ASTS held title "in trust" for her as an individual. Finally, in September 2004

---

[3] The Nguyen defendants' request for judicial notice of these records is granted.

5

ASTS, in a deed executed by Sanchez, conveyed it to Thanh Van Chu.  (See Sanchez Suppl. Decl. ISO Opp. to Defts' Mot. to Dismiss).

Plaintiff alleges that the conveyance to Chu was made for no consideration and was a sham transaction done only to get refinancing on the property.  Chu was paid a "commission" to take title and hold it "in trust" until after the refinancing, then to reconvey it back.  (SAC ¶¶ 26-35).  The scheme allegedly was engineered by defendant Andy Pham (a named defendant, but never served) who had some connection with a lender named Loancity.com (another named defendant, never served).  (Id. ¶¶ 87-93).  Unfortunately, says Sanchez, Pham failed to put the "in trust" agreement in writing "as required by the statute of fraud[s]" (id., ¶ 53) and did not obtain a power of attorney "so I could not take back the property" (id. ¶ 54).  Refinancing apparently was obtained, although it is not clear if that occurred before or after Chu conveyed the property to Nam Nguyen.  Sanchez alleges that Chu sold to Nguyen even though he "never had any legal interest to sell" (id. ¶ 29).

During the months that Chu was on title, he purportedly executed a deed of trust in favor of WebActive, yet another corporation Sanchez says she owns.  It was the WebActive interest in Tumbleweed that sparked the quiet title action in Monterey County Superior Court.  Nguyen sued WebActive to void WebActive's deed of trust.  (See Nguyen defendants' Request for Judicial Notice ("RJN"), Ex. 3).  Homecomings and Citimortgage, Nguyen's lenders, successfully intervened, seeking to protect their interests against three additional deeds of trust purportedly executed in favor of WebActive months after Chu's conveyance to Nguyen.  (Id., Ex. 5).  Sanchez moved to intervene in the Monterey suit, but the motion was denied.  (See RJN, Ex. 6).  (She proceeded with an appeal, which was dismissed when she did not pay filing fees.)  (See Docket No. 15, Exs. 7, 8).  Nguyen obtained summary judgment in January 2007, and a month later, the two lenders obtained a default judgment.  The state court determined that all of the WebActive deeds of trust were void or voidable – wiping out any interest WebActive may have had.  (RJN, Exs. 2, 7).  WebActive did not appeal.

In summary, the papers submitted by Sanchez indicate that she never personally held title to Tumbleweed.  She herself executed the deed to convey Tumbleweed from ASTS to Chu.

6

1  She acknowledges she did not satisfy the statute of frauds to protect her from exactly what
2  happened. See CAL. CIV. CODE §§ 1624, 1091; CAL. CODE CIV. PROC. § 1971. The record
3  before this court is incomplete; but, if what Sanchez says is true, the people she trusted to dupe
4  the refinancing lender evidently decided to dupe her as well. A quiet title judgment is binding
5  on all who were parties, as well as nonparties claiming an interest that was "not of record."
6  CAL. CODE CIV. PROC. § 764.030. The quiet title judgment in favor of Nguyen and his lenders
7  appears to have extinguished whatever rights she arguably may have had in Tumbleweed –
8  rights arising either on account of her oral deal with Pham or by virtue of her claimed
9  ownership of WebActive.[4] She might have state claims for damages against Pham, Chu, and
10 others, but this court does not see any claim to the property itself. More importantly for present
11 purposes, there is no claim based on federal law.

12 There is one final allegation to be examined with reference to Tumbleweed. In the SAC,
13 paragraph 126, Sanchez alleges that Citimortgage ignored her claims of fraud and proceeded to
14 foreclose its deed of trust "even when I was in bankruptcy." That language suggests the
15 possibility of a claim for violation of the automatic bankruptcy stay – a federal claim.
16 However, Citimortgage was the assignee of one of the secured notes given by Nguyen when he
17 bought from Chu. The final judgment of the Monterey court, quieting title, wiped out whatever
18 interest Sanchez might conceivably had in Tumbleweed. Sanchez filed bankruptcy on
19 November 27, 2007, just days before the trustee's sale on the Citimortgage obligation. As of
20 the time of that sale, and despite plaintiff's insistence that she had a claim, her bankruptcy estate
21 had no cognizable legal or equitable interest in the property. Thus, there could be no violation
22 of the automatic stay order. There is no basis for a federal claim here.

23 **B.    Toddy Street Property**

24 Although the information available to this court about Toddy is much sketchier than
25 Tumbleweed, plaintiff alleges that this was another one of her arrangements with Pham to
26 convey her interest in the property "in trust" to someone (exactly who is not clear; several

---

[4] Sanchez, signing as Van Kim Lai on behalf of yet another of her corporations, on June 28, 2006 assigned one of the WebActive deeds of trust to herself as Sylvia Nicole. As noted above, all WebActive deeds of trust were adjudged void or voidable.

7

1 names are mentioned that might fit) in order to obtain refinancing.  (SAC ¶¶ 46, 53-55, 131).
2 As with Tumbleweed, Pham allegedly "orchestrated all of the title transfers" to assist in the
3 refinancing and "agreed to return the title and sign a power of attorney to protect me . . .."  (<u>Id</u>.,
4 ¶ 93).  Once again, Pham, now alleged to be an officer of WebActive (<u>id</u>., ¶ 115), purportedly
5 defrauded her and the corporation.  As a consequence, Sanchez says she lost title and was sued
6 by someone claiming to hold good title.  She apparently became involved in two lawsuits as a
7 result of the Toddy misadventure:  one in Orange County Superior Court and one in the Central
8 District of California.  She alludes to her dissatisfaction with a summary judgment entered by
9 that federal court and thinks it should be overturned.  (<u>Id</u>., ¶¶ 72-77).

10 Once again, Sanchez may have state law claims against Pham and others, but there is
11 nothing here that would support a federal claim.

12 **C.     <u>Soledad Street Property</u>**

13 Sanchez alleges some interest in Soledad Street.  She does not describe that interest, but
14 does say it entitles her to receive property tax bills.  Supposedly, the "City of Salinas' mailman"
15 (SAC ¶ 59), also referred to as "Salinas' post office mail deliver person" (<u>id</u>. ¶ 17), either
16 intentionally or negligently failed to deliver the tax bills to her and she went into default.  (<u>Id</u>.,
17 ¶¶ 17, 42).  She further alleges that Salinas failed to deliver the mail so that the property would
18 be sold at tax auction and Salinas could acquire it.  (<u>Id</u>., ¶ 59).

19 The court takes judicial notice that the U.S. Postal Service mail carriers are not
20 employees of the City of Salinas.  <u>See</u> 39 U.S.C. § 201.  Plaintiff cannot assert a claim against
21 Salinas on this basis.

22 The County of Monterey allegedly did her wrong by failing to split up the tax bills
23 according to percentages of ownership (SAC, ¶ 60), and even though it knew that Sanchez and
24 Corson were "co-owners," did not mail notice of the tax default to the correct address (<u>id</u>., ¶¶
25 20, 43).  Depending on which allegation the reader chooses, either Monterey has a plan to sell
26 the property to Salinas (<u>id</u>., ¶¶ 22, 62), or the property already has been sold at a tax auction
27 (<u>id</u>., ¶¶ 17, 61).  In any event, the gravamen of the complaint is that it was unlawful for
28 Monterey to proceed with the tax auction because plaintiff's interest allegedly was "still

protected by law" and her tax liability "cannot be declared defaulted for another 2 years." (Id., ¶ 127).

Finally, there is this allegation: "When I filed for bankruptcy, Defendant Monterey County's Tax Collector continued to claim that I am liable for the total redemption amount with bankruptcy court." (Id., ¶ 128). Although this is anything but clear, it might mean that Sanchez is saying that Monterey conducted a tax auction on land in which she had a property interest at the time she was in bankruptcy. She alleges no dates that would be helpful to sort out the chronology of events. She filed three Chapter 13 bankruptcies since November 2007. If there was a tax sale (or some other "act" by Monterey in pursuit of collection of the taxes), it is possible that there was an automatic stay in place at the time. Conceivably, the stay may have been violated. On the record presented, the court cannot tell. If there was a violation, that would be the basis for a federal claim.[5]

Although a claim based on a violation of a stay order would ordinarily be heard in bankruptcy court, there is no requirement that it must be heard there. This court also has jurisdiction if it chooses to exercise it. See Justice Cometh Ltd. v. Lambert, 426 F.3d 1342 (11th Cir. 2005); see also generally 5 THOMSON WEST, FEDERAL PROCEDURE, LAWYERS EDITION: BANKRUPTCY, §§ 9.425, 9.437-438 (Janice Holben, ed., 2004).

**D.     Unserved Defendants**

The court understands that Sanchez has never served the summons and complaint on any of the named defendants. There are no proofs of service in the file. At the November 20, 2007 case management conference she acknowledged that she had served no one. The Nguyen defendants appeared voluntarily after learning of the suit through routine monitoring of court

---

[5] In a late-filed declaration in opposition to the current motions to dismiss, Sanchez swore that this court "referred" her to bankruptcy court to litigate her 11 U.S.C. § 362 claims for violation of the stay order. This court did no such thing, and wonders whether plaintiff appreciates the possible consequences of deliberate misrepresentations. Since she chose not to attend the hearing on the motion to dismiss the FAC, nothing the court said then could possibly be the source of any legitimate confusion. The subsequent order on the motion to dismiss the FAC merely said that Corson's bankruptcy, with its accompanying stay order, did not protect Sanchez from legal actions by third persons that affected her claimed rights. Indeed, it was that language which probably prompted her to file her own bankruptcy some months later, so that she could obtain a stay order of her own.

9

filings. The court warned plaintiff that she must follow the Federal Rules of Civil Procedure and well as the Civil Local Rules and Standing Orders – or risk having her case dismissed. She was specifically told to promptly serve the defendants who had not appeared and to look to the court's pro se handbook for practical guidance. (Handbook pages 36 through 41 explain in plain language how to effectuate service, the deadline to accomplish it, and the possible consequences of noncompliance.) She did not comply.

The order on the motion to dismiss the FAC, filed April 10, 2008, included a one-and-a-half page warning to Sanchez that she was in danger of having her case dismissed if she did not serve defendants. She subsequently filed her SAC, but she did nothing about service on defendants. To date, she apparently still has not. (The County of Monterey and City of Salinas also appeared voluntarily after they were named in the SAC.)

Here are the unserved defendants:

The original complaint, filed August 14, 2007, named Jane Bednar (an attorney allegedly hired to represent WebActive and corporate officer Angelo Russo, but who purportedly only helped Russo while she betrayed WebActive), and Angelo Russo (alleged disloyal officer of WebActive). They have been unserved for over 15 months.

The FAC, filed on November 13, 2007, named Andy Pham (who allegedly "engineered" the sham refinance transactions on Tumbleweed and Toddy) and Executive Trustee Services (who reportedly conducted the Citimortgage foreclosure on Tumbleweed). They have been unserved for over 13 months.

The SAC, filed on May 9, 2008, named LoanCity.com (the alleged lender that refinanced both Tumbleweed and Toddy), plus Adam Greely and John Mitchell (attorneys involved somehow in the cases in Orange County and the Central District). They have been unserved for over 7 months.

Fed. R. Civ. P. 4(m) gives a plaintiff 120 days to serve the summons and complaint. That deadline is long past as to all of the defendants just identified. This court has twice warned Sanchez of the possible consequences. More importantly, she has never either offered

1 any explanation for the delay or sought more time to accomplish service.  Enough is enough.
2 The SAC should be dismissed as to the unserved defendants.

### IV.  CONCLUSION

1. Sanchez has had three opportunities to allege facts which would support a federal claim for relief.  She has not succeeded.  With one exception (discussed in paragraph 2., below), it is now clear that she cannot construct a federal claim out of her factual allegations.  Accordingly, this court dismisses her SAC WITHOUT leave to amend under Fed. R. Civ. P. 12(b)(1) as to defendants Suzette Torres, First American Title Insurance, Nam Nguyen, Homecomings Financial Network, Citimortgage, Jeffrey Lowenthal, Bryan Kreft, and City of Salinas.

2. Because this court cannot say for certain that plaintiff is unable to state a federal claim for relief against the County of Monterey for violation of one of her bankruptcy stay orders, the SAC is dismissed WITH leave to amend as to that defendant.  If Sanchez chooses to file an amended complaint against this defendant, she must do more than make broad, conclusory allegations.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  What this court would look for is a reasonable description, with dates, of what Monterey did that violated a stay order.  Which stay order?  What was her interest in the property?  What were the consequences to plaintiff?  How has she been damaged?  Any amended complaint against Monterey shall be filed no later than January 19, 2009.  If Sanchez has not filed it by that date, or secured an extension of time based on good cause, the court will dismiss as to Monterey without further notice.

3. The SAC is dismissed without prejudice as to unserved defendants Bednar,

11

Russo, Pham, Executive Trustee Services, LoanCity, Mitchell, and Greely.

SO ORDERED.

Dated: December 18, 2008

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**5:07-cv-4174 Notice electronically mailed to:**

Citimortgage, Inc. jlowenthal@steyerlaw.com

Edward Egan Smith esmith@steyerlaw.com, aroque@steyerlaw.com

Georgina Berenice Mendoza georgina@ci.salinas.ca.us, julian@ci.salinas.ca.us, susanm@ci.salinas.ca.us

Jessica Carolyn Grannis jgrannis@steyerlaw.com

Susan J. Matcham susanm@ci.salinas.ca.us, georgina@ci.salinas.ca.us, julian@ci.salinas.ca.us

William K. Rentz rentzb@co.monterey.ca.us, zazuetac@co.monterey.ca.us

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.

**5:07-cv-4174 Notice mailed to:**

Christina Sanchez
834 Tumbleweed Drive
Salinas, CA 93905